ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
THOMAS P. CARROLL
D.C. Bar No. 388593
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-4051 (Tel.)
(202) 514-2583 (Fax)
Email: thomas.carroll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ROBERT L. HINES
California Bar No. 123936
SKY C. STANFIELD
California Bar No. 244966
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400 (Tel.)
(415) 954-4480 (Fax)
rhines@fbm.com

Attorneys for Defendant
STARLINK LOGISTICS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| Plaintiff, | **CONSENT DECREE** |
| vs. | |
| STARLINK LOGISTICS, INC., | |
| Defendant. | |

CONSENT DECREE
Case No. _____

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the Department of Interior ("DOI"), filed a complaint in this matter against StarLink Logistics, Inc. ("Defendant" or "SLLI") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607(a), as amended ("CERCLA"), seeking reimbursement of response costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Rhône-Poulenc Inc./Zoecon Corp. Superfund Site, East Palo Alto, California (the "Site") and the recovery of damages for injury to, destruction of, or loss of, natural resources resulting from releases of hazardous substances at and from the Site and the costs of assessing such injury, destruction, or loss.

B.      In cooperation with Federal and State agencies with appropriate jurisdiction, including the United States Fish and Wildlife Service ("FWS") and the California Department of Fish and Game, SLLI restored a near-by salt pond to tidal marsh in anticipation that such project would, among other things, compensate for potential natural resource damage occurring at the Site.  SLLI and DOI agree that the scope of the project exceeds the amount of restoration needed to provide compensation for Natural Resource Damages (other than damage assessment costs as provided herein) resulting from the release of hazardous substances at and from the Site.

C.      The United States and SLLI (collectively, the "Parties") agree that the actions undertaken by SLLI in accordance with this Consent Decree, including entering into the Consent Decree, do not constitute an admission of any liability by SLLI.  SLLI does not admit, and retains the right to controvert in any proceedings other than proceedings to implement or enforce this Consent Decree, the matters set forth in Section VI (Statement of Facts) and Section VII (Determinations) of this Consent Decree.

D.      The United States and SLLI agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

1  THEREFORE, with the consent of the Parties to this Decree, it is ORDERED,

2  ADJUDGED, AND DECREED:

3  ## II. JURISDICTION

4  1.      This Court has jurisdiction over the subject matter of this action pursuant to 28

5  U.S.C. §§ 1331 and 1345; Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b);

6  Section 311(n) of the Clean Water Act, 33 U.S.C. § 1321(n); and Sections 1006 and 1017(b) of

7  the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2706, 2717(b); and also has personal jurisdiction

8  over SLLI.  Solely for the purposes of this Consent Decree and the underlying complaint, SLLI

9  waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this

10  District.  SLLI shall not challenge the terms of this Consent Decree or this Court's jurisdiction to

11  enter and enforce this Consent Decree.

12  ## III. PARTIES BOUND

13  2.      This Consent Decree is binding upon the United States, and upon SLLI.  Any

14  change in ownership or corporate or other legal status, including but not limited to, any transfer of

15  assets or real or personal property, shall in no way alter the status or responsibilities of SLLI

16  under this Consent Decree.

17  ## IV. STATEMENT OF PURPOSE

18  3.      By entering into this Consent Decree, the objectives of the Parties , as more

19  precisely described in the terms of the Consent Decree, are:

20  a.      to reach a final settlement among the Parties with respect to Past Costs,

21  Future Response Costs, and Natural Resource Damages at the Site pursuant to Sections 122(h)

22  and (j) of CERCLA, 42 U.S.C. § 9622(h) and (j), thereby resolving certain alleged liability

23  relating to the Site;

24  b.      to resolve claims by  the Covered Parties that could have been asserted

25  against the United States with regard to the Site; and,

26  c.      to provide for contribution protection for the Covered Parties with regard to

27  the Site pursuant to Sections 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) with respect to the

28  matters addressed in this Consent Decree, as set forth herein.

CONSENT DECREE
Case No. _____          - 3 -

## V. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meanings assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.*

b.      "Consent Decree" shall mean this Consent Decree and the Appendices attached hereto.  In the event of conflict between this Consent Decree and the Appendices, the Consent Decree shall control.

c.      "Covered Parties" shall mean SLLI and affiliates Aventis Agriculture and Hoechst GmbH, and shall also include Rhône-Poulenc Inc., Aventis CropScience USA Inc. and Bayer CropScience Inc.

d.      "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

e.      "Defendant" shall mean StarLink Logistics, Inc.

f.      "DOI" means the United States Department of the Interior and any successor departments, agencies, or instrumentalities of the United States.

g.      "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

h.      "DTSC" shall mean the California Department of Toxic Substances Control.

i.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies, or instrumentalities of the United States.

j.      "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

CONSENT DECREE
Case No. _____
- 4 -

1        k.      "FWS" shall mean the United States Fish and Wildlife Service and any

2  successor entity.

3        l.      "Facility" shall mean the approximately 5-acre property located at 1990

4  Bay Road in the City of East Palo Alto, California, which is depicted generally on the map(s)

5  attached as Appendix A and Appendix B.

6        m.     "Future Response Costs" shall mean all costs, including, but not limited to,

7  direct and indirect costs, that the United States incurs in reviewing or developing plans, reports

8  and other items, verifying implementation of the response action for the Site, or otherwise

9  implementing, overseeing, or enforcing the response action for the Site on or after June 1, 2009.

10       n.     "Interest" shall mean interest at the rate specified for interest on

11  investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of

12  each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the

13  rate in effect at the time the interest accrues. The rate of interest is subject to change on October

14  1 of each year.

15       o.     "NCP" means the National Oil and Hazardous Substances Pollution

16  Contingency Plan, 40 C.F.R. Part 300.

17       p.     "NPL" shall mean the National Priorities List, set forth at 40 C.F.R. Part

18  300, Appendix B.

19       q.     "Natural Resources" shall have the meaning provided in Section 101(16) of

20  CERCLA, 42 U.S.C. § 9601(16).

21       r.     "Natural Resource Damages" means any damages recoverable by DOI on

22  behalf of the public, for injury to, destruction of, loss of, loss of use of, or impairment of Natural

23  Resources at the Site as a result of a release of hazardous substances including, but not limited to:

24  (i) the costs of assessing such injury, destruction, or loss or impairment arising from or relating to

25  such release; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural

26  resources or of acquisition of equivalent natural resources; (iii) the costs of planning such

27  restoration activities; (iv) compensation for injury, destruction, loss, loss of use, or impairment of

28

CONSENT DECREE
Case No. _____

1   natural resources; and, (v) each of the categories of recoverable damages described in 43 C.F.R.

2   § 11.15.

3           s.    "NRD Claims" shall mean the amount of natural resources damages for

4   this Site that FWS has estimated as its current or future claim for the purposes of this Consent

5   Decree only.

6           t.    "Paragraph" shall mean a portion of this Consent Decree identified by an

7   Arabic numeral or an upper or lower case letter.

8           u.    "Parties" shall mean the United States and SLLI.

9           v.    "Past Response Costs" shall mean all costs, including but not limited to

10   direct and indirect costs, that EPA or DOJ on behalf of EPA has paid at or in connection with the

11   Site through May 31, 2009, plus accrued Interest on all such costs consistent with paragraph 34

12   below.

13           w.    "Plaintiff" shall mean the United States.

14           x.    "Regional Board" or "RWQCB" shall mean the California Regional Water

15   Quality Control Board, San Francisco Bay Region, and any successor entity.

16           y.    "RCRA" shall mean the Solid Waste Disposal Act, as amended 42 U.S.C.

17   § 60901 et seq. (also known as the Resource Conservation and Recovery Act).

18           z.    "Section" shall mean a portion of this Consent Decree identified by a

19   Roman numeral.

20           aa.    "Site" shall mean the Rhône-Poulenc Inc./Zoecon Corp. Superfund Site,

21   encompassing 26 acres located at 1990 Bay Road, East Palo Alto, California, as generally shown

22   on the map included as Appendix B.

23           bb.    "SLLI" shall mean StarLink Logistics, Inc., and its successors and

24   assignees.

25           cc.    "State Trustees" shall mean the Director of the California Department of

26   Fish and Game as designated by the Secretary of the California Resources Agency, the Executive

27   Officer of the California State Lands Commission, and the Executive Director of the State Water

28

CONSENT DECREE
Case No. _____

- 6 -

Resources Control Board, as designated by the Secretary of the California Environmental

Protection Agency, and any successor entities.

dd.     "United States" shall mean the United States of America, including its

departments, agencies and instrumentalities.

ee.     "Upland OU" shall mean the 9-acre portion of the Site as generally shown

on Appendix B, which includes properties to the north and west of the Facility and the PG&E

poleyard.

ff.     "Wetland OU" shall mean the 2-acre portion of the tidal wetland on the

eastern edge of the Site as generally shown on Appendix B.

## VI. STATEMENT OF FACTS

5.      The Site is located in the City of East Palo Alto, California along the western

shore of the San Francisco Bay.  See Appendix A.

6.      The Site is defined to include areas with arsenic concentrations in soil greater

than 20 milligrams per kilogram of undried (wet) soil and sediment (mg/kg) and is comprised of

several individual properties.  See Appendix B.

7.      The Facility is the approximately 5 acre property located at 1990 Bay Road.

The Facility was used to formulate agricultural chemicals for more than 60 years.

8.      From approximately the 1920s until 1964, the Facility was owned by Chipman

Chemical Company ("Chipman") and used for manufacturing of arsenic-based products such as

weed control compounds.  In 1964, Rhodia Inc. ("Rhodia"), acquired Chipman and continued

operations at the Facility until the late 1960s.  In 1971, Rhodia sold the Facility to Zoecon

Corporation ("Zoecon"), which began operations in 1972 following expansion of site facilities.

Zoecon, which later became Sandoz Agro Inc. ("Sandoz"), manufactured biorational insect

controls at the agrichemical facility.  In 1994, Rhône-Poulenc Inc., formerly known as Rhodia

("Rhône-Poulenc"), repurchased the real property from Sandoz.  Catalytica, Inc. ("Catalytica")

subsequently purchased some of the property improvements from Sandoz and leased the real

property from Rhône-Poulenc for use in the manufacturing of chemicals and pharmaceutical

intermediates.  Catalytica ceased operations in mid-2001.  The plant and office facilities were

1   demolished in the spring of 2002. The property is now vacant, except for a warehouse structure

2   adjacent to Bay Road.

3        9.     In 2000, Rhône-Poulenc became Aventis CropScience USA Inc. ("Aventis

4   CropScience"). In 2001, the Facility was sold to SLLI. In 2002, Aventis CropScience was sold

5   to and changed its name to Bayer CropScience Inc. ("Bayer CropScience").

6        10.     The portions of the Site aside from the Facility include partly developed

7   commercial properties to the north, south, and west, residential and mixed-use properties to the

8   south, a portion of an electrical substation property to the east, and a small portion of a tidal

9   wetland located beyond a levee east of the Facility.

10        11.     Remedial activities began at the Site in 1981, when an initial investigation of the

11   extent of arsenic in soil and groundwater was conducted.

12        12.     In 1985, the Site was proposed for inclusion on the NPL under CERCLA, and

13   also in 1985, the California Department of Health Services issued Sandoz, the Facility owner and

14   operator at the time, a permit to store and treat hazardous waste under  RCRA authority (permit

15   No. CAT000611350).  In 1989, EPA formally removed the Site from consideration for the NPL.

16        13.     From 1987 to 1991, the Site was under the jurisdiction of DTSC pursuant to a

17   Consent Order between DTSC, the RWQCB, and Rhône-Poulenc.  Lead agency status changed in

18   January 1991 to the RWQCB and the provisions of the Consent Order were vacated by

19   stipulation, except those referencing cost recovery.

20        14.     The Remedial Investigation (RI) report for the Site was completed in 1989, and

21   the Feasibility Study (FS) report was completed for a portion of the Site that encompassed

22   approximately 9 acres, called the Upland Operable Unit, in 1991.  The properties to the north and

23   west of the Facility and the PG&E poleyard are included in the Upland Operable Unit.

24        15.     A Record of Decision ("ROD") was issued by the EPA for the Upland Operable

25   Unit in March 1992, and the selected remedial actions were incorporated into RWQCB Order 92-

26   022.

27        16.     In 1994, RWQCB Order 94-042 addressed certain remedial actions on an

28   additional 11.8 acres of the Site referred to as the Upland Operable Unit Annex.

CONSENT DECREE
Case No. _____
- 8 -

17. In 1997, remedial actions for an additional 3.6 acres, referred to as the South of Weeks Street Subarea, were required by RWQCB Order 97-095.

18. A portion of the tidal marsh comprises the Wetland Operable Unit.

19. Significant remedial activities have been conducted in the Upland Operable Unit, Upland Operable Unit Annex, South of Weeks Street Subarea, and for groundwater.

20. In the Upland Operable Unit and Upland Operable Unit Annex, accessible soil containing greater than 5000 mg/kg arsenic has been disposed off site, accessible soil containing arsenic at concentrations between 500 and 5000 mg/kg has been treated, and remaining soil containing greater than 70 mg/kg arsenic has been capped and the properties deed restricted. In the South of Weeks Subarea, accessible soil with arsenic concentrations greater than 20 mg/kg has been removed. Limited additional soil removal will be conducted when structures are removed on the Bains and Wilson properties. A slurry wall and groundwater extraction system (phytoremediation) have been installed at the Site. Groundwater monitoring continues. A feasibility study was prepared for the Wetland Operable Unit in 2005 which was finalized in 2007.

21. RWQCB Order 92-127 required an Ecological Assessment of the tidal marsh, which was timely prepared.

22. Remedial activities in the Upland Operable Unit Annex resulted in the filling of 3.34 acres of seasonal wetlands.

23. RWQCB Order 94-042 required an offset for any wetlands filled as the result of the remedy at a ratio of three acres of wetland created, enhanced, or restored for every acre eliminated. The RWQCB approved the restoration of the 115-acre Cooley Landing Salt Pond, located north of Bay Road to the northeast of the Facility. Ten acres of this 115-acre restoration project were committed to off-set for filling 3.34 acres of the non-tidal wetland in the late 1990s.

24. The draft FS report for the Wetland Operable Unit was submitted in 2004 and the final FS was submitted in 2007.

25. RWQCB Order R2-2005-0033 for the Wetland Operable Unit required an offset of 1.3 acres of the Cooley Landing Salt Pond restoration area be provided in recognition of the

CONSENT DECREE
Case No. ____  _____

- 9 -

1   loss of wetland habitat quality caused by the Site. The calculation of this offset is described in the

2   final Wetland Operable Unit FS. This acreage is in addition to the ten acres that were committed

3   to offset for filling 3.34 acres of the non-tidal wetland.

4          26.     Restoration activities were performed during the Fall of 2000 and tidal

5   circulation was restored to the Cooley Landing Salt Pond in December 2000. Hydrologic and

6   biologic monitoring of the salt pond has been ongoing since that time. Information currently

7   known to the United States indicates the presence of one or more Natural Resources at or near the

8   Site which may have been, or which may be, injured by release(s) of hazardous substances or

9   which may have been or which may be injured by response actions.

10         27.     EPA has coordinated assessments, investigations and planning with the Federal

11   and State Natural Resources Trustees pursuant to CERCLA Section 104(b)(2), 42 U.S.C.

12   9604(b)(2) relating to these NRD Claims.

13         28.     EPA has provided the Federal and State Natural Resources Trustees with proper

14   and necessary notice under CERCLA Section 122 relating to these NRD Claims.

15                          VII. DETERMINATIONS

16         29.     The Site is a "facility" as that term is defined in Section 101(9) of CERCLA, 42

17   U.S.C. § 9601(9).

18         30.     SLLI is a "person" as that term is defined in Section 101(21) of CERCLA, 42

19   U.S.C. § 9601(21).

20         31.     SLLI is potentially liable pursuant to Section 107(a) of CERCLA, 42 U.S.C. §

21   9607(a).

22         32.     There has been an actual or threatened "release" of a "hazardous substance" at

23   the Site as those terms are defined in Section 101(22) and (14) of CERCLA, 42 U.S.C. §

24   9601(22) and (14).

25         33.     The actual or threatened release of a hazardous substance at the Site has caused

26   or may cause the incurrence of response costs and may have injured, or may injure, Natural

27   Resources within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

28

CONSENT DECREE                           - 10 -
Case No. _____

VIII. PAYMENT OF RESPONSE COSTS TO EPA

34.     Payment of Past Response Costs to EPA.  Within 30 days of entry of this Consent Decree, SLLI shall pay to EPA $784,363.33, plus an additional sum for Interest on that amount from June 1, 2009 through the date of entry of this Decree.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with EFT instructions provided to SLLI by the Financial Litigation Unit of the U.S. Attorney's Office in the Northern District of California following lodging of the Consent Decree.

35.     At the time of payment, SLLI shall also send notice that payment has been made to EPA and DOJ in accordance with Section XVII (Notices and Submissions).  Such notice shall reference the EPA Region and Site/Spill Identification Number 0998, DOJ case number 90-11-3-09436, and the civil action number.

36.     The total amount to be paid pursuant to Paragraph 34 shall be deposited in the Rhône-Poulenc Inc./Zoecon Corp. Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

37.     Payment of Future Response Costs to EPA.

a.     SLLI shall pay to EPA all Future Response Costs relating to the Wetland OU, and not inconsistent with the National Contingency Plan.  On a periodic basis, EPA will send SLLI a bill requiring payment of any Future Response Costs incurred that includes a cost summary, setting forth direct and indirect costs incurred by EPA, DOJ, and their identified contractors, if any.  SLLI shall make all payments within 30 days of SLLI's receipt of each bill requiring payment, except as otherwise provided in Paragraph 38.  SLLI shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the EPA Region and Site/Spill Identification Number 0998, DOJ case number 90-11-3-09436, and the civil action number, or by transferring the payment electronically within 30 days of SLLI's receipt of the bill requiring payment.  SLLI shall send the check(s) to:

U.S. Environmental Protection Agency
Superfund Payments
Cincinnati Finance Center
P.O. Box 979076
St. Louis, MO  63197-9000

Any electronic transfer of funds shall be directed to the Federal Reserve Bank of New York, as follows:

Federal Reserve Bank of New York
ABA  =  021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency "

      b.      At the time of payment, SLLI shall send notice that payment has been made to EPA and DOJ in accordance with Section XVII. (Notices and Submissions).  Such notice shall reference the EPA Region and Site/Spill Identification Number 0998, DOJ case number 90-11-3-09436, and the civil action number.

      c.      Of the amounts to be paid pursuant to Paragraph 37.a above, $185,000.00 shall be deposited in the Rhône-Poulenc Inc./Zoecon Corp. Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      38.      Contested Payment Procedures.  SLLI may contest payment of any Future Response Costs in accordance with the provisions of this Paragraph.

      a.      Standard.  SLLI may contest payment of any Future Response Costs billed by EPA if it determines that EPA has made an accounting error or has included costs outside the scope of this Consent Decree, or if it alleges that a cost item that is included represents costs that are inconsistent with the NCP.

CONSENT DECREE
Case No. _____

- 12 -

1          b.      <u>Procedures</u>.  The dispute resolution procedures set forth in this Paragraph

2   shall be the exclusive mechanism for resolving disputes regarding SLLI's obligation to reimburse

3   EPA for its Future Response Costs.

4          c.      <u>Dispute Resolution</u>.  The dispute resolution mechanism described in this

5   Paragraph is only available if SLLI complies with the following conditions:

6               (1)      <u>Notice</u>.  Any objection to payment of EPA's Future Response Costs

7   shall be made in writing within 30 days of receipt of the bill and must be sent to EPA and DOJ in

8   accordance with Section XVII. (Notices and Submissions).  Any such objection (hereinafter

9   referred to as the "Notice of Objection") shall specifically identify the contested Future Response

10   Costs and the basis for objection.

11               (2)      <u>Payment of Undisputed Amounts</u>.  In the event of an objection to

12   some but not all Future Response Costs, SLLI shall within the 30 day period pay all uncontested

13   Future Response Costs to EPA in the manner described in Paragraph 37.a above.

14               (3)      <u>Escrow for Disputed Amounts</u>.  Within 45 days of receipt of a bill

15   for Future Response Costs which are disputed, SLLI shall establish an interest-bearing escrow

16   account in a federally-insured, State chartered bank, and remit to that escrow account funds

17   equivalent to the amount of the contested Future Response Costs.  SLLI shall send to EPA and

18   DOJ, as provided in Section XVII. (Notices and Submissions), a copy of the correspondence that

19   establishes and funds the escrow account, including, but not limited to, information containing the

20   identity of the bank and bank account under which the escrow account is established as well as a

21   bank statement showing the initial balance of the escrow account.

22          d.      <u>Informal Dispute Resolution</u>.  Any dispute with respect to Future Response

23   Costs shall in the first instance be the subject of informal negotiations between EPA and SLLI.

24          e.      <u>Formal Dispute Resolution</u>.

25               (1)      <u>Initiation</u>.  If the dispute is not resolved by informal dispute

26   resolution, either party may commence formal dispute resolution by sending a Notice of Formal

27   Dispute Resolution to the other party to the dispute.  The Notice of Formal Dispute Resolution

28   shall be accompanied by a written Statement of Position by the party who serves the Notice,

CONSENT DECREE

Case No. _____

1    stating the basis of that party's position and citing all factual data, analysis, opinion or other

2    material on which that party relies to support its position.  The opposing party shall have 30 days

3    in which to serve a Response setting forth the same information supporting its position.

4              (2)    Administrative Record and Decision.  EPA shall maintain an

5    administrative record of any dispute as to Future Response Costs for which formal dispute

6    resolution has been initiated.  The administrative record shall include the disputed bill and all cost

7    documentation sent by EPA to SLLI, the Notice of Objection served by SLLI, the Notice of

8    Formal Dispute Resolution and accompanying Statement of Position, the opposing party's

9    Response, and any other documents or information sent to EPA by SLLI for inclusion in the

10   record or relied on by EPA in reaching an administrative resolution of the dispute.  The Director

11   of the Superfund Division, EPA Region IX, will issue a final administrative decision determining

12   whether the disputed Future Response Costs, or any part of them, shall be disallowed as

13   inconsistent with the NCP, the result of an accounting error, or costs outside the scope of this

14   Consent Decree.

15             (3)    Judicial Appeal.  SLLI may appeal EPA's administrative decision

16   made pursuant to the preceding subparagraph to this Court within 30 days of its receipt of EPA's

17   decision.  The Court's review of EPA's decision shall be limited to EPA's administrative record.

18   Judicial review of any dispute under this subparagraph shall be governed by applicable principles

19   of administrative law.

20        f.    Payment Following Dispute Resolution.  Payments determined to be owing

21   to EPA following dispute resolution shall be paid from the escrow account (including accrued

22   Interest on the amounts owed) to EPA in the manner described in Paragraph 37.a above within 10

23   days after receipt of the Court's decision or, if the decision is not timely appealed, within 10 days

24   of EPA's decision.  To the extent that any amounts are determined not to be owed, SLLI shall be

25   disbursed the remainder of the escrow account.

26        39.   Interest on Late Payments.  In the event that the payment required by Paragraph

27   34 is not made within 30 days of the date of entry of this Consent Decree or the payments

28   required by Paragraph 37.a are not made within 30 days of the SLLI's receipt of the bill, SLLI

CONSENT DECREE
Case No. _____                        - 14 -

1   shall pay Interest on the unpaid balance. The Interest under this Paragraph to be paid on the
2   amount due under Paragraph 34 shall begin to accrue on the date of entry of this Consent Decree.
3   The Interest under this Paragraph on Future Response Costs due under Paragraph 37.a shall begin
4   to accrue on the date of the bill. The Interest shall accrue through the date of the SLLI's payment.
5   Payments of Interest made under this Paragraph shall be in addition to such other remedies or
6   sanctions available to Plaintiff by virtue of SLLI's failure to make timely payments under this
7   Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 40.
8   SLLI shall make all payments required by this Paragraph in the manner described in Paragraph
9   37.a.

10          40.     Stipulated Penalties.

11          a.      If any amounts due under Paragraph 34 are not paid by the required date,
12   SLLI shall be deemed in violation of this Consent Decree and shall pay to EPA, as a stipulated
13   penalty, in addition to Interest required by Paragraph 39, $500 per day that such payment is late.
14   Stipulated penalties are due and payable within 30 days of the date of the demand for payment of
15   the stipulated penalties by EPA.

16          b.      If any amounts due under Paragraph 37.a are not paid by the required date,
17   SLLI may be deemed in violation of this Consent Decree and shall pay to EPA, as a stipulated
18   penalty, in addition to the Interest required by Paragraph 39, $100 per violation per day that such
19   payment is late. Stipulated penalties are due and payable within 30 days of the date of the
20   demand for payment of the stipulated penalties by EPA.

21          c.      All payments to EPA under this Paragraph shall be identified as "stipulated
22   penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous
23   Substance Superfund," or by transferring the payment electronically within 30 days of SLLI's
24   receipt of the bill requiring payment. The check, or a letter accompanying the check, shall
25   reference the Site name, the EPA Region and Site/Spill Identification Number 0998, DOJ case
26   number 90-11-3-09436, and the civil action number. SLLI shall send the check (and any
27   accompanying letter) to:

28

CONSENT DECREE
Case No. _____          - 15 -

U.S. Environmental Protection Agency
Superfund Payments
Cincinnati Finance Center
P.O. Box 979077
St. Louis, MO 63197-9000

Any electronic transfer of funds shall be directed to the Federal Reserve Bank of New York, as

follows:

Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental
Protection Agency "

d.     At the time of each payment, SLLI shall also send notice that payment has

been made to EPA and DOJ in accordance with Section XIV. (Notices and Submissions).  Such

notice shall reference the Site name, the EPA Region and Site/Spill Identification Number 0998,

DOJ case number 90-11-3-09436, and the civil action number.

e.     Penalties shall accrue as provided in this Paragraph regardless of whether

EPA has notified SLLI of the violation or made a demand for payment, but need only be paid

upon demand.  All stipulated penalties shall begin to accrue on the day after payment is due and

shall continue to accrue through the date of payment.  Nothing herein shall prevent the

simultaneous accrual of separate penalties for separate violations of this Consent Decree.

41.     Notwithstanding any other provision of this Section, EPA may, in its

unreviewable discretion, reduce or waive the stipulated penalties that have accrued pursuant to

Paragraph 40.  Payment of stipulated penalties shall not excuse SLLI from payment as required

by Paragraph 34 or 37 or from performance of any other requirements of this Consent Decree.

IX.  PAYMENT OF NATURAL RESOURCE DAMAGES TO DOI

42.     Within 30 days of entry of this Consent Decree, SLLI shall pay to DOI

$12,764.20 in reimbursement of DOI's damage assessment costs.  Payment to DOI shall be made

by Electronic Funds Transfer (EFT) to the U.S. Department of Justice lockbox, referencing DOJ

CONSENT DECREE
Case No. _____

- 16 -

1    case number 90-11-3-09436 and the civil action number, in accordance with the EFT instructions

2    that shall be provided by the United States Attorney's office after lodging of this Decree.  Any

3    EFT received at the United States Department of Justice lockbox after 4:00 p.m. (Eastern Time)

4    will be credited on the next business day.  SLLI shall simultaneously send a copy of the EFT

5    transmittal notice to the Chief, Environmental Enforcement Section, U.S. Department of Justice,

6    P.O. Box 7611, Washington D.C.  20044, Attn: DOJ No.  90-11-3-09436.  Notice of the EFT also

7    shall be sent to:

8
           U.S. Department of the Interior
9            Natural Resource Damage Assessment and Restoration Program
           Attention:  Restoration Fund Manager
           1849 C Street, NW
10           Mail Stop 4449
           Washington, DC  20240
11

12        43.     Interest on Late Payments.  In the event that the payment required by Paragraph

13    42 is not made within 30 days of the entry of this Consent Decree, SLLI shall pay Interest on the

14    unpaid balance.  The Interest shall begin to accrue on the entry of this Consent Decree and shall

15    accrue through the date of the SLLI's payment.

16        44.     Stipulated Damages.

17           a.     If any amounts due under Paragraph 42 are not paid by the required date,

18    SLLI shall be in violation of this Consent Decree and shall pay to the United States, as stipulated

19    damages, in addition to the Interest required by Paragraph 43, $100 per day that such payment is

20    late.  Stipulated damages are due and payable within 30 days of the date of the demand for

21    payment of the stipulated damages by DOI.

22           b.     Stipulated damages shall accrue as provided in this Paragraph regardless of

23    whether the United States has notified SLLI of the violation or made a demand for payment, but

24    need only be paid upon demand.  All stipulated damages shall begin to accrue on the day after

25    payment is due and shall continue to accrue through the date of payment.  Nothing herein shall

26    prevent the simultaneous accrual of separate damages for separate violations of this Consent

27    Decree.

28

c. At the time of each payment, SLLI shall also send notice that payment has been made to DOI and DOJ in accordance with Section XVII. (Notices and Submissions). Such notice shall reference the Site name, DOJ case number 90-11-3-09436, and the civil action number.

d. Stipulated damages shall accrue as provided in this Paragraph regardless of whether DOI has notified SLLI of the violation or made a demand for payment, but need only be paid upon demand. All stipulated damages shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing herein shall prevent the simultaneous accrual of separate damages for separate violations of this Consent Decree.

45. Payment Procedures. All payments to the United States under Paragraphs 43 or 44 shall be identified as "interest" or "stipulated damages" as applicable, and shall be made by certified or cashier's check made payable to "The United States Treasury." The check, or a letter accompanying the check, shall reference the Site name, DOJ case number 90-11-3-09436, and the civil action number. SLLI shall send the check (and any accompanying letter) to:

> United States Attorney's Office
> Northern District of California
> 450 Golden Gate Avenue, Box 36055
> San Francisco, CA 94102

46. In any action to enforce this Consent Decree, the United States shall be entitled to its costs (including attorneys fees) necessary to collect any amounts due under but not paid by SLLI in accordance with this Consent Decree.

47. Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of SLLI's failure to comply with the requirements of this Consent Decree.

48. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, reduce or waive the stipulated damages that have accrued pursuant to Paragraph 44. Payment of stipulated damages shall not excuse SLLI from payment as required by Paragraph 42 or from performance of any other requirements of this Consent Decree.

## X.  COVENANT NOT TO SUE BY PLAINTIFF

49.     Covenant Not to Sue by United States.  Except as specifically provided in Section XI. (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against the Covered Parties pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover Past Response Costs or Future Response Costs, or pursuant to CERCLA Section 107, 42 U.S.C. § 9607, or Section 1002(b)(2)(A) of OPA, 33 U.S.C. § 2702(b)(2)(A), or Section 311(f)(4) and (5) of the CWA, 33 U.S.C. § 1321(f) (4) and (5), to recover Natural Resource Damages.  This covenant not to sue shall take effect upon receipt by EPA and DOI of the payments required by Paragraphs 34 and 42.  This covenant not to sue is conditioned upon the satisfactory performance by SLLI of its obligations under this Consent Decree.  This covenant not to sue extends only to the Covered Parties.

## XI.  RESERVATIONS OF RIGHTS BY UNITED STATES

50.     The United States reserves, and this Consent Decree is without prejudice to, all rights against the Covered Parties with respect to all matters not expressly included within the Covenant Not to Sue by Plaintiff in Paragraph 49.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against the Covered Parties with respect to any claim of:

a.      liability for alleged failure of SLLI to meet a requirement of this Consent Decree;

b.      liability for alleged costs incurred or to be incurred by the United States that are not within the definition of Past Response Costs, Future Response Costs, or Natural Resource Damages;

c.      liability for alleged injunctive relief or administrative order enforcement under Section 106 of CERCLA, 42 U.S.C. § 9606;

d.      liability for alleged damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments that are not within the definition of Natural Resource Damages; and

e.      criminal liability.

CONSENT DECREE
Case No. _____
- 19 -

## XII. COVENANT NOT TO SUE BY COVERED PARTIES

51. The Covered Parties covenant not to sue and agree not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to Past Response Costs, Future Response Costs, Natural Resource Damages, or this Consent Decree, including:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claim arising out of the response actions at the Site for which the Past Response Costs or Future Response Costs were incurred, including any claim under the United States Constitution, the Constitution of the State of California, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or,

c. any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to Past Response Costs, Future Response Costs, or Natural Resource Damages.

52. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

53. Non-Exempt De Micromis Waiver. The Covered Parties agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to the Covered Parties with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

54.     The waiver in Paragraph 53 shall not apply with respect to any defense, claim, or cause of action that the Covered Parties may have against any person meeting the above criteria if such person asserts a claim or cause of action relating to the Site against the Covered Parties.  This waiver also shall not apply to any claim or cause of action against any person meeting the above criteria if EPA determines:

a.      that such person has failed to comply with any EPA requests for information or administrative subpoenas issued pursuant to Section 104(e) or 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) or 9622(e), or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site, or has been convicted of a criminal violation for the conduct to which this waiver would apply and that conviction has not been vitiated on appeal or otherwise; or,

b.      that the materials containing hazardous substances contributed to the Site by such person have contributed significantly, or could contribute significantly, either individually or in the aggregate, to the cost of response action or natural resource restoration at the Site.

## XIII.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

55.     Except as provided in Paragraphs 49 (Covenant Not to Sue by United States) and  53 (Non-Exempt De Micromis Waiver), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.  Except as provided in Paragraphs 49 (Covenant Not to Sue by United States) and 53 (Non-Exempt De Micromis Waiver), the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action that they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a party hereto.

56.     The Parties agree, and by entering this Consent Decree this Court finds, that the Covered Parties are entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree.  The "matters addressed" in this

CONSENT DECREE
Case No. _____                              - 21 -

1    Consent Decree are Past Response Costs, Future Response Costs, and Natural Resource

2    Damages.

3       57.    SLLI agrees that, with respect to any suit or claim for contribution brought by

4    the Covered Parties for matters related to this Consent Decree, SLLI will notify the United States

5    in writing no later than 60 days prior to the initiation of such suit or claim. SLLI also agrees that,

6    with respect to any suit or claim for contribution brought against the Covered Parties for matters

7    related to this Consent Decree, SLLI will notify the United States in writing within 20 days of

8    service of the complaint or claim upon it. In addition, SLLI shall notify the United States within

9    10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt

10    of any order from a court setting a case for trial, for matters related to this Consent Decree.

11       58.    In any subsequent administrative or judicial proceeding initiated by the United

12    States for injunctive relief, recovery of response costs, or other relief relating to the Site, the

13    Covered Parties shall not assert, and may not maintain, any defense or claim based upon the

14    principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other

15    defenses based upon any contention that the claims raised by the United States in the subsequent

16    proceeding were or should have been brought in the instant case; provided, however, that nothing

17    in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in

18    Section X.

19

## XIV. SITE ACCESS

20       59.    SLLI shall, commencing on the date of lodging of this Consent Decree, provide

21    the United States and its representatives, including EPA and its identified contractors, with access

22    at reasonable times to areas of the Site which SLLI owns or over which it has control, for the

23    purpose of conducting any response activity related to the Site, including, but not limited to, the

24    following activities:

25       a.    Monitoring, investigation, removal, remedial or other activities at the Site;

26       b.    Verifying any data or information submitted to the United States;

27       c.    Conducting investigations relating to contamination at or near the Site;

28       d.    Obtaining samples;

e.   Assessing the need for, planning, or implementing response actions at or near the Site;

f.   Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by SLLI or its agents, consistent with Section XV. (Access to Information); and,

g.   Assessing SLLI's compliance with this Agreement.

60.   Notwithstanding any provision of this Agreement, EPA retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA and any other applicable statute or regulations.

## XV.   ACCESS TO INFORMATION

61.   SLLI shall provide to EPA, upon request, copies of all records, reports, or information (hereinafter referred to as "records") within its possession or control or that of its contractors or agents relating to activities at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site.

62.   Confidential Business Information and Privileged Documents.

a.   SLLI may assert business confidentiality claims covering part or all of the records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). Records determined to be confidential by EPA will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies records when they are submitted to EPA, or if EPA has notified SLLI that the records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such records without further notice to SLLI.

b.   SLLI may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If SLLI asserts such a privilege in lieu of providing records, it shall provide Plaintiff with the following:  1) the title of the record;

CONSENT DECREE
Case No. _____          - 23 -

2) the date of the record; 3) the name, title, affiliation (e.g., company or firm), and address of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. If a claim of privilege applies only to a portion of a record, the record shall be provided to Plaintiff in redacted form to mask the privileged information only. SLLI shall retain all records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the SLLI's favor.

63.     No claim of confidentiality shall be made with respect to any Site data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, evidencing conditions at the Site.

## XVI. RETENTION OF RECORDS

64.     Until 5 years after the entry of this Consent Decree, SLLI shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

65.     After the immediate conclusion of the 5-year document retention period in the preceding Paragraph, SLLI shall notify the United States at least 90 days prior to the destruction of any such records, and, upon request by the United States, SLLI shall deliver any such records to EPA. SLLI may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If SLLI asserts such a privilege, it shall provide Plaintiff with the following: 1) the title of the record; 2) the date of the record; 3) the name, title, affiliation (e.g., company or firm), and address of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. If a claim of privilege applies only to a portion of a record, the record shall be provided to Plaintiff in redacted form to mask the privileged information only. SLLI shall retain all records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the SLLI's favor. SLLI may also assert business confidentiality claims consistent with Paragraph 62.a.

CONSENT DECREE
Case No. _____                     - 24 -

66.     SLLI hereby certifies that, to the best of its knowledge and belief, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e).

## XVII. NOTICES AND SUBMISSIONS

67.     Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other SLLI in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOI, DOJ and SLLI, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-09436)
P.O. Box 7611
Washington, D.C.  20044-7611

and

Director, Superfund Division
United States Environmental Protection Agency
Region 9
75 Hawthorne Street
San Francisco, CA 94105

and

Charles McKinley
Office of the Solicitor
U.S. Department of the Interior
Office of the Solicitor
600 Harrison St., Suite 545
San Francisco, CA  94197-1373

CONSENT DECREE
Case No. _____

- 25 -

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-09436)
P.O. Box 7611
Washington, D.C.  20044-7611

As to EPA:

Steve Berninger, ORC-3
Assistant Regional Counsel
United States Environmental Protection Agency
Region 9
75 Hawthorne Street
San Francisco, CA  94105

Rose Marie Caraway, SFD-7-2
Remedial Project Manager
United States Environmental Protection Agency
Region 9
75 Hawthorne Street
San Francisco, CA  94105

David Wood, MTS-4-2
Regional Financial Management Officer
United States Environmental Protection Agency
Region 9
75 Hawthorne Street
San Francisco, CA 94105

As to DOI:

Charles McKinley
Office of the Solicitor
U.S. Department of the Interior
Office of the Solicitor
600 Harrison St., Suite 545
San Francisco, CA  94197-1373

As to SLLI:

Stuart Dearden
Senior Director
sanofi-aventis U.S.
P.O. Box 6800
Bridgewater, NJ  08807

Michelle Bruno
Senior Corporate Counsel
sanofi-aventis U.S.
55 Corporate Drive (Mail Stop: 55A-525A)

1    Bridgewater, NJ 08807

2    Robert L. Hines
3    Farella Braun + Martel LLP
     235 Montgomery Street
4    San Francisco, CA 94104

5                    XVIII. RETENTION OF JURISDICTION

6    68.    This Court shall retain jurisdiction over this matter for the purpose of

7    interpreting and enforcing the terms of this Consent Decree.

8                    XIX. INTEGRATION/APPENDICES

9    69.    This Consent Decree and its appendices constitute the final, complete and

10   exclusive agreement and understanding among the Parties with respect to the settlement

11   embodied in this Consent Decree. The Parties acknowledge that there are no representations,

12   agreements or understandings relating to the settlement other than those expressly contained in

13   this Consent Decree. The following appendices are attached to and incorporated into this Consent

14   Decree: "Appendix A" is the map of the Site, and "Appendix B" includes a depiction of Site

15   areas and areas of elevated arsenic concentrations at the Site.

16             XX. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

17   70.    This Consent Decree shall be lodged with the Court for a period of not less than

18   30 days for public notice and comment. The United States reserves the right to withdraw or

19   withhold its consent if the comments regarding the Consent Decree disclose facts or

20   considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.

21   SLLI consents to the entry of this Consent Decree without further notice.

22   71.    If for any reason this Court should decline to approve this Consent Decree in the

23   form presented, this agreement is voidable at the sole discretion of any party and the terms of the

24   agreement may not be used as evidence in any litigation between the Parties.

25                    XXI. SIGNATORIES/SERVICE

26   72.    The undersigned representative of SLLI and the Deputy Chief of the

27   Environmental Enforcement Section of the Environment and Natural Resources Division, United

28

CONSENT DECREE                                  - 27 -
Case No. _____

1  States Department of Justice, certifies that he or she is authorized to enter into the terms and

2  conditions of this Consent Decree and to execute and bind legally such Party to this document.

3       73.    SLLI hereby agrees not to oppose entry of this Consent Decree by this Court or

4  to challenge any provision of this Consent Decree, unless the United States has notified SLLI in

5  writing that it no longer supports entry of the Consent Decree.

6       74.    SLLI shall identify, on the attached signature page, the name and address of an

7  agent who is authorized to accept service of process by mail on behalf of that Party with respect

8  to all matters arising under or relating to this Consent Decree. SLLI hereby agrees to accept

9  service in that manner and to waive the formal service requirements set forth in Rule 4 of the

10  Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not

11  limited to, service of a summons. The Parties agree that SLLI need not file an answer or

12  otherwise respond to the complaint in this action unless or until the Court expressly declines to

13  enter this Consent Decree.

14  XXII. FINAL JUDGMENT

15       75.    Upon approval and entry of this Consent Decree by the Court, this Consent

16  Decree shall constitute the final judgment between and among the Parties. The Court finds that

17  there is no just reason for delay and therefore enters this judgment as a final judgment under Fed.

18  R. Civ. P. 54 and 58.

19

20  SO ORDERED THIS 18th    DAY OF December   , 2009.

21

22  United States District Judge

23

24

25

26

27

28

CONSENT DECREE
Case No. _____
- 28 -

1    THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *U.S. v.*
2 *StarLink Logistics, Inc.*, relating to the *Rhône-Poulenc Inc./Zoecon Corp. Superfund Site*.

    FOR PLAINTIFF UNITED STATES OF AMERICA:

3

4    _____        Date: __September 10, 2009__
5    ELLEN M. MAHAN
     Deputy Chief
     Environmental Enforcement Section
6    Environment and Natural Resources Division
     United States Department of Justice
7

8    _____        Date: __September 10, 2009__
     THOMAS P. CARROLL
9    Senior Attorney
     Environmental Enforcement Section
10   Environment and Natural Resources Division
     Department of Justice
11   P.O. Box 7611
     Washington, D.C. 20044-7611
12   (202) 514-4051 (Tel.)
     (202) 514-2583 (Fax)
13   thomas.carroll@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE
Case No. _____        - 29 -

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *U.S. v. StarLink Logistics, Inc.*, relating to the *Rhône-Poulenc Inc./Zoecon Corp. Superfund Site*.

2

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

3

4  Date: 9/2/09

KEITH TAKATA

5  Director, Superfund Division
U.S. Environmental Protection

6  Region 9
75 Hawthorne Street

7  San Francisco, CA 94105

8  Date: August 7, 2009

9  STEPHEN BERNINGER
Assistant Regional Counsel

10  U.S. Environmental Protection Agency
Region 9

11  75 Hawthorne Street
San Francisco, CA 94105

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE                        - 30 -
Case No. _____

1    THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *U.S. v.*
     *StarLink Logistics, Inc*., relating to the *Rhône-Poulenc Inc./Zoecon Corp. Superfund Site*.

2
     FOR DEFENDANT STARLINK LOGISTICS, INC.:
3

4    _Richard H. Thomson_                              Date: _July 22, 2009_

5    RICHARD H. THOMSON
     Treasurer
     55 Corporate Drive
6    Bridgewater, NJ 08807-2854

7    Agent Authorized to Accept Service on Behalf of Above-signed Party:

8    Corporation Service Company
     2711 Centerville Road, Suite 400
9    Wilmington, Delaware 19808

10

11

12

13   18590\1961656.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE
Case No. _____                    - 31 -

1

**APPENDIX A**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE
Case No. _____



Basemap from USGS Quadrangle Map
Palo Alto, California 1991

0    1000    2000

SCALE IN FEET

$\Sigma^2\Pi$

S.S. Papadopulos & Associates, Inc.

**SITE LOCATION MAP**

1990 Bay Road
East Palo Alto, California

**Appendix A**

1  **APPENDIX B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE
Case No. _____

- 33 -



EXPLANATION

Upland Operable Unit

Wetland Operable Unit

Upland Operable Unit Annex

South of Weeks Street
Subarea

Extent of Soil with Arsenic
Concentrations Greater than
20 mg/kg Prior to Remediation

SCALE IN FEET
0        300

**OPERABLE UNITS AND SUBAREAS**

1990 Bay Road Site
East Palo Alto, California

$\Sigma^2\Pi$

S.S. Papadopulos & Associates, Inc.

Appendix B